NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 27 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JL BEVERAGE COMPANY, LLC, | No.   18-16597 |
| Plaintiff-Appellant, | D.C. No. 2:11-cv-00417-MMD-CWH |
| v. | |
| JIM BEAM BRANDS CO.; BEAM INC., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, Chief District Judge, Presiding

Argued and Submitted January 10, 2020
San Francisco, California

Before:  WALLACE and FRIEDLAND, Circuit Judges, and LASNIK,** District Judge.

JL Beverage Company, LLC ("JL Beverage") brought a trademark

infringement action against Jim Beam Brands Co. and Beam Inc. ("Jim Beam").

JL Beverage appeals from the district court's order granting Jim Beam's motion to

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

strike JL Beverage's jury trial demand and from the district court's judgment in favor of Jim Beam. We affirm.

1. The district court did not err by striking JL Beverage's demand for a jury trial. JL Beverage contends that it had a Seventh Amendment right to a jury trial on its claim for disgorgement of profits under the Lanham Act. *See* 15 U.S.C. § 1117(a) (providing that a prevailing plaintiff is "entitled, . . . subject to the principles of equity, to recover . . . defendant's profits"). But we held in *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059 (9th Cir. 2015), that "[a] claim for disgorgement of profits under § 1117(a) is equitable, not legal" and thus does not "invoke[] [the] right" to a jury trial. *Id.* at 1074-76. Under *Fifty-Six Hope Road Music*, the Seventh Amendment did not provide JL Beverage the right to a jury trial in this action.

2. As we previously held, the "likelihood of consumer confusion is central" to JL Beverage's claims. *JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1104 (9th Cir. 2016). The district court's conclusion that there was no likelihood of consumer confusion was not clearly erroneous.

a. It was not clear error for the district court to conclude that the "similarity of the marks" factor of the *Sleekcraft* test weighed against finding a likelihood of confusion. *See generally AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain*

2

*Prods.*, 353 F.3d 792 (9th Cir. 2003). We acknowledge that the design of the lips featured on Jim Beam's product was very similar to the design of the lips featured on JL Beverage's product. And both Jim Beam and JL Beverage coordinated the color of the lips with the flavor of the vodka. But the marks must be considered "in their entirety and as they appear in the marketplace." *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1128 (9th Cir. 2014). On JL Beverage's product, the lips were used to spell "Johnny Love Vodka" (the name of JL Beverage's vodka) and were featured against a clean silver background. On Jim Beam's product, the lips appeared below "Pucker" (the name of Jim Beam's vodka) and were featured against a background with bright splotches of color. *Cf. Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002) (concluding that consumers "encounter[ed] the trademarks differently in the marketplace" when two companies used the exact same slogan "as a tagline to their distinctive business names"). The shapes of the bottles were also different. In light of these dissimilarities, the district court's determination on the "similarity of the marks" factor was not clearly erroneous.

**b.** The district court correctly summarized the relevant law on the "intent" factor. With respect to JL Beverage's forward confusion claim, the district court quoted the legal standard outlined in *Marketquest Group, Inc. v. BIC Corp.*, 862 F.3d 927 (9th Cir. 2017): "whether defendant in adopting its mark intended to capitalize on plaintiff's good will." *See id.* at 934 (quoting *Fortune Dynamic, Inc.*

3

*v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1043 (9th Cir. 2010)). There is a presumption that such intent exists "whe[n] an alleged infringer knowingly adopts a mark similar to another's." *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1059 (9th Cir. 1999) (quoting *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993)). With respect to JL Beverage's reverse confusion claim, the district court accurately restated the "indicia of intent" referred to in *Marketquest Group*: "evidence that a defendant deliberately intended to push the plaintiff out of the market," and evidence that a defendant "culpably disregarded the risk of reverse confusion," the latter of which can be proved by showing that "the defendant knew of the mark [or] should have known of the mark." *See* 862 F.3d at 934-35.

In applying these legal standards to the facts here, the district court did not clearly err in holding that the "intent" factor "does not weigh in favor of a finding of likelihood of confusion." Jim Beam at least had constructive knowledge of one of JL Beverage's marks when Jim Beam received from its trademark counsel a letter referring to the mark and a report containing the mark. And Jim Beam eventually had actual knowledge of JL Beverage's marks, such as through JL Beverage's cease and desist letter. However, Jim Beam's mere knowledge of JL Beverage's mark does not warrant an inference that Jim Beam had an intent to confuse in light of the district court's not-clearly-erroneous determination that the

4

marks were not similar. *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002) (holding that such an inference "may be drawn only" when an alleged infringer uses a mark that is held to be "similar" to the plaintiff's mark); *cf. Marketquest Group*, 862 F.3d at 937 ("An inference of bad faith does not arise from mere knowledge of a mark when the use is otherwise objectively fair, even in a case presenting reverse confusion."). Moreover, the evidence in the record indicating that Jim Beam had a good faith belief that it was not infringing further supports that it was not clear error for the district court to treat the intent factor as indeterminate. *Cf. M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1085 (9th Cir. 2005) (not weighing the intent factor in the plaintiff's favor when there was evidence that the defendant's "attorney believed that [the defendant] could 'carve out' a non-infringing mark").

**c.** JL Beverage also challenges the district court's holding that the "strength of the mark" factor did not weigh in favor of finding a likelihood of confusion. "In a reverse confusion case, . . . we must focus on the strength of the *junior* user's mark." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130 n.5 (9th Cir. 1998) (second alteration in original). Due to Jim Beam's strong market presence, it is possible that "consumers doing business with [JL Beverage] might [have] mistakenly believe[d] that they [were] dealing with [Jim Beam]." *See JL Beverage*, 828 F.3d at 1107 (quoting *Dreamwerks Prod. Grp. Inc.*, 142 F.3d at

1130).  But this could only have been true in the year 2011, when both JL Beverage's vodka product and Jim Beam's vodka product were being sold.  It appears to be unclear from the record whether Jim Beam's trade dress design was already commercially strong in 2011 (the year its vodka product launched), such that consumers were likely to have been confused at that time.

We need not decide, however, whether the district court's "strength of the mark" determination was clearly erroneous.  Even assuming it was, when the district court's "errors are corrected and the totality of the facts is considered,"[1] we are not persuaded that the court's overall likelihood of confusion finding was clearly erroneous.  *See Pom Wonderful*, 775 F.3d at 1132.  The visual dissimilarities between JL Beverage's product and Jim Beam's product, coupled with the number of factors that do not clearly weigh in favor of finding a likelihood of confusion, prevent us from having a "definite and firm conviction that a mistake has been committed."  *See id.* (quoting *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir. 2009)).

**AFFIRMED.**

---

[1] We agree with JL Beverage that the "type of goods and the degree of care likely to be exercised by the purchaser" factor should be given little weight.



*JL Beverage Company, LLC v. Beam, Inc., et al.*, No. 18-16597

FRIEDLAND, Circuit Judge, concurring:

I agree that JL Beverage had no Seventh Amendment right to a jury trial under *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059 (9th Cir. 2015). I write separately to highlight the tension between *Fifty-Six Hope Road Music*, which concluded that a claim for disgorgement of profits under the Lanham Act does not trigger the constitutional right to a jury trial, and *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020), which concluded that a claim for disgorgement of profits under the Copyright Act of 1909 ("Copyright Act")[1] does trigger that right. In my view, *Fifty-Six Hope Road Music* was correct, and *Krofft* was not.

The Seventh Amendment right to a jury trial applies in "Suits at common law," U.S. Const. amend. VII, which the Supreme Court has "consistently interpreted . . . to refer to 'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered,'" *Granfinanciera, S.A. v.*

---

[1] This Act has since been superseded by the Copyright Act of 1976, Pub. L. No. 94-553, 90 Stat. 2541. Like the Copyright Act of 1909, the Copyright Act of 1976 permits a plaintiff to recover the infringer's profits. *See* 17 U.S.C. § 504(b).

1

*Nordberg*, 492 U.S. 33, 41 (1989) (quoting *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 447 (1830)).  To determine whether the Seventh Amendment provides a right to a jury trial, the most important inquiry is whether "the remedy sought . . . is legal or equitable in nature."  *See id.* at 42 (quoting *Tull v. United States*, 481 U.S. 412, 417-18 (1987)).

Applying this inquiry would seem to indicate that disgorgement of profits is an equitable remedy, not a legal one, whether sought under the Lanham Act (which focuses on "the registration, use, and infringement of trademarks and related marks," *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28-29 (2003)), or under the Copyright Act.

In early trademark and copyright cases alike, disgorgement of profits (also referred to as an "accounting" of profits, *see* Restatement (Third) of Restitution and Unjust Enrichment § 51 cmt. a) was a remedy awarded by courts of equity.  In trademark cases, "[t]he infringer [was] required *in equity* to account for and yield up his gains to the true owner."  *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 259-60 (1916) (emphasis added); *see also generally Romag Fasteners, Inc. v. Fossil, Inc.*, No. 18-1233, 2020 WL 1942012, at *3-4 (U.S. Apr. 23, 2020).  Likewise, "recovery of profits . . . had been allowed *in equity* . . . in copyright . . . cases as appropriate equitable relief incident to a decree for an injunction."  *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 399 (1940)

2

(emphasis added); *see also Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1324-25 (Fed. Cir. 2018) ("As for copyright and trademark infringement, we have seen no support for concluding that disgorgement of profits was available at law for those wrongs."), *cert. denied*, 139 S. Ct. 2741 (2019).

And in both the trademark and copyright contexts, the theoretical justification for awarding profits was based on an analogy to the equitable remedy of a constructive trust, also called a trust *ex maleficio*. "When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a [constructive] trustee" who is obligated to turn over the property to the constructive beneficiary. *See Trust*, Black's Law Dictionary (11th ed. 2019) (quoting *Beatty v. Guggenheim Expl. Co.*, 122 N.E. 378, 380 (N.Y. 1919)). Applied to trademark and copyright cases, "[t]he theory was that it was unconscionable for an infringer to retain a benefit which he had received by the appropriation and use of the plaintiff's property right; and to prevent unjust enrichment the infringer was treated as a trustee *ex maleficio* of his ill gotten gains." *See Sammons v. Colonial Press*, 126 F.2d 341, 345 (1st Cir. 1942) (italicization added) (copyright); *see also Hamilton-Brown Shoe Co.*, 240 U.S. at 259 (trademark); *Sheldon*, 309 U.S. at 405-06 (copyright); *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343,

3

1357 (11th Cir. 2019) (trademark); Mark A. Thurmon, *Ending the Seventh Amendment Confusion: A Critical Analysis of the Right to a Jury Trial in Trademark Cases*, 11 Tex. Intell. Prop. L.J. 1, 97 (2002).

Moreover, as *Fifty-Six Hope Road Music* explained, both the Supreme Court and our court have indicated that "actions for disgorgement of improper profits are equitable in nature." *See* 778 F.3d at 1075; *see also Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998) (observing that the Supreme Court has described "actions for disgorgement of improper profits" as "equitable"); *Tull*, 481 U.S. at 424 (stating that "an action for disgorgement of improper profits" is "traditionally considered an equitable remedy"); *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993) ("[A]ctions for disgorgement of improper profits are equitable in nature."); *Smith v. Barton*, 914 F.2d 1330, 1337 (9th Cir. 1990) ("[D]amages may be equitable where they are restitutionary, 'such as in action[s] for disgorgement of improper profits.'" (second alteration in original) (quoting *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990))).[2]

---

[2] In a recent case involving a claim for disgorgement of profits under the Copyright Act of 1976, the Supreme Court stated: "Like other restitutional remedies, recovery of profits 'is not easily characterized as legal or equitable,' for it is an 'amalgamation of rights and remedies drawn from both systems.' Given the 'protean character' of the profits-recovery remedy, we regard as appropriate its treatment as 'equitable' in this case." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 668 n.1 (2014) (citations omitted) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 4 cmts. b, c)). This statement is consistent

4

The foregoing suggests that *Fifty-Six Hope Road Music* was right to conclude that disgorgement of profits is an equitable remedy, and that *Krofft* was wrong to conclude that it is a legal remedy. And nothing in *Krofft* itself persuades otherwise.

*Krofft* concluded that an accounting of profits was "basically a money claim for damages" and thus a legal remedy which made the Seventh Amendment right applicable. *See* 562 F.2d at 1175 (quoting *Swofford v. B & W, Inc.*, 336 F.2d 406, 411 (5th Cir. 1964)); *see also generally Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 866 (9th Cir. 2017) (explaining that "compensatory damages" are "the classic form of legal relief"). But *Krofft* did not explain why an accounting of profits was tantamount to a legal claim for "compensatory damages." *See* 562 F.2d at 1175 (quoting *Swofford*, 336 F.2d at 411).

In fact, *Krofft* itself acknowledged that "[a]n accounting for profits" was "a creature of *equity*." *Id.* (emphasis added) (quoting *Swofford*, 336 F.2d at 411). And historically, while "[d]amages [we]re awarded to a copyright proprietor on the conventional legal principle of affording compensation[,] . . . an infringer's profits from his wrongful act [we]re awarded to the copyright proprietor" on a different

---

with a general rule treating disgorgement of profits as an equitable remedy—while also suggesting that there could be exceptions on a case-by-case basis where there are "peculiarly legal considerations at play." *See* 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.06[B][3][d][i].

rationale: "prevent[ing] the infringer's unjust enrichment." *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 193 F.2d 162, 167-68 (1st Cir. 1951), *aff'd*, 344 U.S. 228 (1952); Kenneth E. Burdon, Note, *Accounting for Profits in a Copyright Infringement Action: A Restitutionary Perspective*, 87 B.U. L. Rev. 255, 269 (2007). Thus, "if the infringer [made] greater profits than the copyright owner lost," the owner would be "allowed to capture the additional profit even though it [would] not [compensate any] loss to him." *Taylor v. Meirick*, 712 F.2d 1112, 1120 (7th Cir. 1983); *see also Sammons*, 126 F.2d at 345-46. *Krofft* did not mention this distinction between profits and damages, much less provide a reason for analogizing the former to the latter despite it.

*Krofft* also considered the Supreme Court's decision in *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962), to be "controll[ing]" on the jury trial question. *See Krofft*, 562 F.2d at 1175 & n.22. But *Krofft*'s interpretation that *Dairy Queen* held there is a right to a jury trial on a claim for disgorgement of profits has been repudiated in the years since *Krofft* was decided. Both the Supreme Court and our court have observed that *Dairy Queen*'s holding was about a claim for *damages*, not a claim for disgorgement of profits. *See Feltner*, 523 U.S. at 346 (describing *Dairy Queen* as an "action for damages for trademark infringement"); *Fifty-Six Hope Road Music*, 778 F.3d at 1075 (noting that "the Supreme Court characterizes

6

the *Dairy Queen* claim as a legal claim for damages (not disgorgement of profits)" (citing *Feltner*, 523 U.S. at 346)).

Since *Krofft* was decided, we have not relied on its jury trial analysis in any published decision. And other courts have declined to apply *Krofft*'s conclusion on the Seventh Amendment right. *See Fair Isaac Corp. v. Fed. Ins. Co.*, 408 F. Supp. 3d 1019, 1029 & n.9 (D. Minn. 2019) (rejecting the reasoning of *Krofft* and observing that "[i]t is telling that, in the more than forty years since [*Krofft*], no court has cited, much less adopted, its analysis"); *Siegel v. Warner Bros. Entm't Inc.*, 581 F. Supp. 2d 1067, 1073-74 (C.D. Cal. 2008) (distinguishing *Krofft* and holding that "an accounting of profits between co-owners of a copyright" is an equitable remedy that does not trigger the jury trial right). By contrast, in the trademark context, other courts are in accord with *Fifty-Six Hope Road Music* that there is no right to a jury trial if the only monetary relief sought by the plaintiff is disgorgement of profits. *See* 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32:124.

Our decision in this trademark action applies that rule and reaches what I think is the right result under governing Seventh Amendment doctrine: JL Beverage sought an equitable remedy and therefore had no constitutional right to a jury trial. Although I think the contrary rule in *Krofft* is incorrect, we have no occasion in this trademark case to decide the applicability of the jury trial right in

7

copyright cases.[3]  But if and when we are presented with an appeal in which a

copyright plaintiff's right to a jury trial on a claim for disgorgement of profits is

contested, I think the rule we adopted more than forty years ago in *Krofft* would be

worth revisiting.

---

[3] The question whether a plaintiff seeking disgorgement of profits in a copyright infringement action has a constitutional right to a jury trial may be raised in few cases.  In the overwhelming majority of copyright cases, the plaintiff does not seek profits and instead elects to seek statutory damages (for which there is a right to a jury trial under *Feltner*, 523 U.S. at 355).  *See* Ben Depoorter, *Copyright Enforcement in the Digital Age: When the Remedy Is the Wrong*, 66 UCLA L. Rev. 400, 407, 418 & tbl. 1 (2019).